U NITED  S TATES  D ISTRICT  C OURT          S OUTHERN  D ISTRICT OF  T EXAS

| | | |
|---|---|---|
| Habiba Ewing, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action 08-2697 |
| | § | |
| Metropolitan Life Insurance Company, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.      *Background.*

Habiba Ewing worked for Shell Oil Company as a communications advisor. She injured her shoulder when her laptop bag slipped off it in May of 2006. The weight of the laptop bag jerked her shoulder and back. She had shoulder surgery that November. After surgery, she applied for long-term disability benefits from Shell. Metropolitan Life Insurance Company, the administrator and insurer of Shell's worker benefits, denied her application; the denial was upheld in March of 2008. Ewing then submitted additional medical records, and Metlife rejected her application again in June of 2008. Because Metlife's decision was supported by substantial evidence, it will be upheld.

2.      *Late Records.*

Already having had an opportunity to submit new medical records after Metlife's first denial of her application, Ewing wants the court to consider more documents. These are dated after Metlife's second denial of Ewing's application for benefits in mid-June, 2008. Judicial review of the administrator's decision is limited to the record before it. *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). Ewing's exhibits B, C, and D, were not before the administrator and will not be considered.

3.      *Standard.*

The Employee Retirement Income Security Act of 1974 allows a person who is denied benefits under a plan to sue in federal court. 29 U.S.C. § 1132(a)(1)(B) (2008). The plan authorizes Metlife to use discretion to determine an insured's eligibility; courts defer to the private administrative process of the plan in their review of claims. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989).

If substantial evidence supports the decision, then it must be upheld. That an administrator has dual responsibilities of determining when disability awards should be paid and being the entity that disburses the payment, however, does not amount to substantial evidence of an abuse of discretion.

4.      *Injury.*

To qualify for benefits, Ewing must show that she had a disability covered under Shell's plan.

Ewing had an MRI on August 25, 2006, three months after she injured her shoulder. The images showed that she had a shoulder impingement – a tendon compressed between bones. Doctor Rodriguez, Ewing's treating physician, operated in November of 2006. Because she had not torn a muscle, Rodriguez recommended physical therapy and ibuprofen.

Ewing continued to complain to Rodriguez of pain, so he referred her for an evaluation of her functional capacity. Ewing was tested in February of 2007, and the results showed that she could work seated for eight hours per day and could lift up to ten pounds using her left hand. She showed self-limiting behavior during the evaluation by complaining of pain, but the doctor found no physiological corroboration of these complaints.

In March of 2007, Rodriguez reviewed a new MRI of Ewing's shoulder. He said that it was normal. He also said that she may have reflex sympathetic dystrophy – chronic pain from an unidentified nerve injury. He recommended orthopaedic rehabilitation.

Doctor Nash, an orthopaedist, did a bone scan of Ewing's shoulder in April of 2007. Although he found evidence of swelling, the scan showed no signs of reflex sympathetic dystrophy. Nash continued treating Ewing for pain.

She had another capacity test in July of 2007. The test showed that Ewing had a limited ability to work seated for eight hours per day. Her performance, however, was inconsistent because she sporadically stopped the exercises, complaining of pain. Again, no physiological

corroboration was seen, and the doctor noted that her responses seemed exaggerated. During this test, she was able to lift up to 10 pounds with her left hand.

Ewing saw Nash for four months after her second capacity test. Ewing still complained of intermittent pain but said that her medication alleviated it. Nash released Ewing to return to light work on September 13. Ewing told Metlife that she could return to work with restrictions on October 2. Although she returned to work at the end of October, Ewing claimed to have a severe relapse and stopped working on November 9.

Doctors Nash and Perkison conducted capacity tests within a week of each other in November. Nash found that Ewing was able to perform handling functions, although he noted that the capacity tests may not accurately reflect the typing that Ewing did at work. Perkison, who had only treated Ewing once before, found that she was not able to work with her hands and could only type five minutes per hour. Perkison thought that Ewing's tests were consistent with reflex sympathetic dystrophy.

On December 14, 2007, Ewing had an electromyography that showed normal sensory and motor function in her shoulder and no signs of reflex sympathetic dystrophy.

Metlife denied Ewing's claim on December 28. In January of 2008 Nash said that Ewing could not use her right arm. Metlife denied Ewing's claim again in June.

5.    *Shell's Response.*

On October 22, 2007, Shell offered Ewing a graduated schedule to return to work, starting at four hours per day and building to eight hours per day over four weeks. Shell also offered voice recognition software so she would not have to type exclusively. Shell also said that she would not have to carry or lift more than five to ten pounds and could sit or stand at her desk.

Ewing tried to work from home after her reported relapse, but she told Shell that she could not continue. No objective medical data shows that she was unable to do the work that Shell asked of her.

6.    *Metlife's Reviews.*

Metlife competently weighed the medical reports from Doctors Nash, Rodriguez, and Perkison in December of 2007. Metlife rationally relied more on the assessments of Nash,

Ewing's treating physician, than on those of Perkison–a physician who only saw her once and contradicted himself within his report.

Ewing appealed Metlife's decision in January of 2008. She submitted more letters from Nash and Perkison, but they were simply conclusions that she was disabled and hypotheses based on her previous subjective complaints of pain, not new examinations. She also submitted a report from Doctor White at a pain center who said that she had chronic right shoulder pain that could have been aggravated by her recent weight gain. Her doctors recommended that she participate in a pain clinic. However, objective clinical tests, including laboratory tests, an MRI, and physical performance, showed at most a mild decrease of sensation and increased tenderness in her shoulder and back. Metlife's physician found that her complaints of pain contradicted the physical findings.

Ewing says that Metlife did not pay her claim because doing so would have prevented its own financial gain. Despite the accusation, Metlife's determination was based on objective medical data–not the fact that it would have had to pay the claim. If employers like Shell could not designate an insurer to also administer claims, the cost of insurance would rise. That cost would be passed on to employees like Ewing. For Ewing to suggest that Metlife's decision is suspect because of its financial interest defies economics.

Metlife reopened Ewing's claim in April of 2008, after she hired an attorney. Ewing submitted notes from three more office visits with Nash in early 2008. Metlife still could find no objective data to support a disability and denied her claim.

Nothing in the record shows that Ewing could not do either her job as it was in 2006 or the accommodated work that Shell was willing to allow in 2007. Metlife's decisions were reasonable.


7.      *Definition of Disabled.*

Ewing says that Metlife abused its discretion by saying in one of its decision-letters that Ewing must be unable to perform her job for *any employer* in the local economy. Ewing says that the proper standard is that she was unable to perform her regular job or a comparable occupation with Shell which Shell has offered to her. Although Ewing is correct in her restatement of the articulated standard in the plan, it did not prejudice her. In the same letter, Metlife finds that Ewing has not shown how her injury prevents her from performing her own job with Shell. Metlife applied the correct standard.

8.      *Conclusion.*

Metlife's decision was supported by the record and will be upheld. Habiba Ewing is not disabled under the plan.


Signed on August 31, 2010, at Houston, Texas.


Lynn N. Hughes
United States District Judge